In re LEWIS F. PERRY & WHITNEY CO.

(District Court, D. Massachusetts. April 7, 1909.)

No. 14,121.

1. BANKRUPTCY (§ 76*)—PETITION—RIGHT TO JOIN—"CREDITOR."

Since a "creditor" within the bankruptcy act includes every one who owns a provable demand or claim, a creditor within such definition is not disqualified as a petitioner because he acquired the claim by assignment after commission of an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 99; Dec. Dig. § 76.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

2. BANKRUPTCY (§ 76*)—PETITIONING CREDITORS—ASSIGNED CLAIMS.

Where an assignment of claims against an alleged bankrupt to employés of the petitioning creditors was a deliberate splitting of claims by such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

petitioner, in order to secure an advantage in the bankruptcy proceeding to which neither he nor the assignor was lawfully entitled, and for no other·purpose, the assignees were not entitled to join.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 99; Dec. Dig. § 76.*]

3. BANKRUPTCY (§ 76*)—INVOLUNTARY PETITION—PETITIONING CREDITORS.
Where W., a creditor of an alleged bankrupt, did not appear in the proceeding, but the petitioning creditor, under a power from W., attempted to assign her claim to two of his employés in order to make the requisite number to sustain the petition, the fact that W. owned ·a claim which would have made her a competent petitioner was immaterial on the question of the sufficiency of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 99; Dec. Dig. § 76.*]

4. BANKRUPTCY (§ 91*)—CLAIMS—TRANSFER—EVIDENCE.
Evidence *held* insufficient to sustain a referee's finding that a claim against a bankrupt had been absolutely transferred to two of the alleged petitioning creditors, and that the original petitioner had authority from the owner of the claim to make such transfer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 138; Dec. Dig. § 91.*]

5. BANKRUPTCY (§ 76*)—ASSIGNMENTS—CONSENT OF CREDITORS—EFFECT.
Where an assignment for creditors constituted the act of bankruptcy relied on, creditors who had assented to the assignment were not entitled to join in an involuntary bankruptcy petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 97; Dec. Dig. § 76.*]

6. PRINCIPAL AND AGENT (§ 137*)—ACTS OF AGENT—AUTHORITY—ESTOPPEL.
Where the clerk of a creditor of an alleged bankrupt gave his employer's assent to an assignment by the bankrupt for the benefit of creditors, and had in many previous instances of the same character given similar assents, the creditor was estopped to deny the clerk's authority, and was bound· by his act.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 492; Dec. Dig. § 137.*]

7. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 44*)—ASSENT—FRAUD.
Affidavits seeking to avoid creditors' assents to an assignment for the benefit of creditors on the ground of misrepresentation or concealment were insufficient, where no misrepresented facts existing before the assents were given were specified.

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 197; Dec. Dig. § 44.*]

8. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 215*)—ACTS OF ASSIGNEE—IMPUTATION TO ASSIGNOR.
That an assignee for the benefit·of creditors made an arrangement with a bank to assume the claim of any creditor. is not imputable to the assignor, unless the assignee was acting at the instance or as agent of the assignor.                                                                 \

[Ed. Note.—For other cases, see Assignments for Benefit of Creditors, Cent. Dig. § 725; Dec. Dig. § 215.*]

9. BANKRUPTCY (§ 95*)—INVOLUNTARY PETITION—MAJORITY CREDITORS.
That only an inconsiderable minority of creditors desired administration of an insolvent estate in bankruptcy, and the greater proportion in number and amount regarded the bankrupt's common-law assignment as more for their interest, did not justify the court in resolving every. doubtful question of fact or law against the petitioning creditors, if there were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

three bona fide creditors applying for administration in bankruptcy whose claims amounted to $500.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 140; Dec. Dig. § 95.*]

In the matter of the Lewis F. Perry & Whitney Company, an alleged bankrupt. Application for adjudication. Petition dismissed. See, also, 172 Fed. 744, 752.

Jacobs & Jacobs, for petitioning creditors.
Charles E. Heywood, for alleged bankrupt.
Morse & Friedman, for objecting creditors.
Francis T. Leahy, pro se.

DODGE, District Judge. The sole act of bankruptcy relied on in this petition, which was filed September 23, 1908, is a general assignment for the benefit of creditors to Birney C. Parsons, alleged to have been made on September 11, 1908. It is not disputed that such an assignment was made, but on September 10th, as the referee has found, instead of September 11th, according to the petition.

Two of the three original petitioning creditors, viz., Skelly and Beaumont, were not creditors on September 10, 1908. On that date the demands or claims, of which they allege themselves the owners in the petition, belonged either to the firm of Stroheim & Romann, the third petitioning creditor, or to Mrs. Woititz by transfer from them, and were in either case within the control of Stroheim. By the contrivance and under the direction of Stroheim, the demands or claims referred to were transferred to Skelly and Beaumont, respectively, for a nominal consideration, after the debtor's assignment, for the sole purpose of qualifying them as petitioning creditors.

1. It is urged that no one can be a petitioning creditor who did not own his demand or claim at the date of the act of bankruptcy complained of. This would seem to have been held in Re Callison (D. C.) 130 Fed. 987, and affirmed on appeal in Brake v. Callison, 129 Fed. 201, 63 C. C. A. 359. See, also, Collier, Bankruptcy (6th Ed.) 460, 461; Remington, Bankruptcy, § 214. If this doctrine is sound, it debars Skelly and Beaumont from any standing to maintain the petition. But in the decisions above referred to, and in the earlier cases under the present act cited in them, the situation dealt with appears to have been that in which the petitioning creditor's demand or claim, though it had become provable when the petition was filed, was not provable by him or by any one else when the act of bankruptcy was committed. Here the demands or claims relied on would have been provable by their owners, so far as their inherent character goes, on and after September 10th. "Creditor," in the present bankruptcy act, includes every one who owns a provable demand or claim. In the authorities relied on reasons in support of the rulings made are assigned which are of considerable force, but in view of the above definition I hesitate to hold that a creditor is disqualified as a petitioner for no other reason than that the claim owned by him was not transferred to him until after the act of bankruptcy. See Lowell, Bankruptcy, p. 35, § 50.

2. Assuming Mrs. Woititz to have owned the two notes transferred to Skelly and Beaumont on September 22, 1908, when the transfer is said to have been made to them, the transfer then was effected, on the petitioners' evidence, by Stroheim without her knowledge. He claims to have had general authority from her; but, if he had it, he used it in this instance for his own purposes, which were to procure two creditors to execute the petition in place of Mrs. Woititz alone. The transfer was a deliberate "splitting of the claim" by him, in order to secure an advantage in the bankruptcy proceedings to which neither he nor Mrs. Woititz was lawfully entitled. It served no other purpose whatever. After the transfer, he or she, for all purposes of the bankruptcy proceedings, controlled both notes as much as they did before it. Skelly and Beaumont were both of them in his employ, and in everything done by them in these proceedings were simply following his orders without any real interest of their own. I must hold that these facts disqualify both Skelly and Beaumont as petitioning creditors. To recognize them as such would be to permit a scheme to succeed, which is contrary to the policy of the bankruptcy act. In re Tribelhorn, 137 Fed. 3, 69 C. C. A. 601; In re Halsey Electric Generator Co. (D. C.) 163 Fed. 118.

3. Mrs. Woititz is not a petitioning creditor, and has not appeared in the proceedings in any manner, not even as a witness. For the purposes of the question whether there is a sufficient number of petitioning creditors to support this petition, the fact that she owns a claim such as would have made her a competent petitioner, had she been a petitioner at all, if true, seems to me immaterial. Skelly and Beaumont have never petitioned as her trustees or representatives, but in their own right as independent owners of respective notes.

4. If it be true that the notes referred to were in fact transferred from Stroheim & Romann to Mrs. Woititz in June and August, 1908, they remained in Stroheim's possession and under his control thereafter as before. To show that the discount of them, to which he has testified, was absolute and without reservation, not qualified by any undisclosed understanding or intention, and that the notes continued to be her separate property down to and at the time of their alleged transfer to Skelly and Beaumont, there is only the unsupported evidence of Stroheim. Nor is there anything more to show that he had authority from Mrs. Woititz sufficient to warrant the dealings with these notes on her behalf to which he has testified. He did not testify in person before the referee, who had before him only the same depositions, given by Stroheim in New York, which are before the court. It is not a case, therefore, in which the presumption in favor of the referee's conclusions, arising from the fact that he has seen and heard the witness, arises. So far as the case turns upon the acceptance of his testimony as true, I must decline so to accept it. I am obliged to regard it as the testimony of one attempting to support by his unsupported statements a questionable transaction, planned by him and carried through in such secrecy that he is the only person who knows the essential facts regarding it, and to consider it insufficient for that purpose. In many of its details it is contradicted by admissions of his own, or by the evidence of other witnesses examined by the petitioner, which need

not, however, in the view of the matter I have taken, be referred to in detail.

5. For the reasons above stated, I am obliged to differ with the referee, and to hold that only one of the three original petitioners is capable of bringing such a petition, viz., the firm of Stroheim & Romann. There are three alleged creditors who have applied to join in the original petition since it was filed, viz., Alfred Charles Dodman, on October 27, 1908, Dennison Manufacturing Company, on October 29th, and Perkins & Co., Incorporated, on November 2, 1908. There is no dispute that Dodman has a right to become a party to the petition. As to the right of the other two interveners there is dispute.

6. The Dennison Company's intervention was signed and verified by its treasurer, on the company's behalf. It appears that an assent in writing to the common-law assignment of September 10th on the company's behalf by Lucius Cummings, Jr., its clerk, was given on September 12th. If this was the company's assent, so given as to bind it, the company is estopped to maintain the petition in which it later sought to join, according to the well-settled law in this circuit. It is urged that Cummings, as clerk, was without authority to give the company's assent. It is shown, however, that in many previous instances he had been permitted by the company to give its assent to similar assignments, just as he undertook to do here. From September 12th to September 30th there was no suggestion that the company's assent had not been duly given. On September 30th, in an affidavit later filed here with its petition to intervene, Cummings swore that his assent was induced by misrepresentation and concealment of facts, and that he "hereby withdraws his assent." This was no doubt by way of anticipation of the objection to permitting the company to intervene, that its assent had been given. Further reference is made below to this affidavit; but it is to be noticed here that there was at the time no suggestion by Cummings or any one else that he was not authorized on September 12th to signify the company's assent to the assignment. A later petition by the company, filed December 18th, asks that it be permitted to withdraw its attempted intervention. That the assent of the company was validly given, so far as Cummings' authority is concerned, I do not think can be properly denied under these circumstances. The company is therefore estopped to intervene so far as this question is concerned.

7. Perkins & Co., Incorporated, like the Dennison Company, had assented to the common-law assignment before it undertook to intervene here. Its assent, like that of the Dennison Company, was claimed to have been induced by misrepresentation and concealment of facts. An affidavit to that effect, made by F. A. Perkins, its president, accompanies its petition to intervene, just as Cummings' affidavit to the like effect accompanied the Dennison Company's petition. I think it clear, on the evidence, that neither of these affidavits should ever have been made or filed. The persons who swore to them had, according to the testimony they have since given, no such knowledge as justified them in stating under oath that anything had ever been misrepresented or concealed in connection with their assents. They relied solely on

what was told them by the attorneys for the petitioning creditors, who were actively endeavoring to support the petition by as many creditors' interventions as they could get. The affidavits are not on information and belief, but as of the personal knowledge of the affiants, and no fact said to have been misrepresented or concealed is specified. They afford no support whatever to the case of the petitioners or interveners. If the claim is still insisted upon that the assent of either of the above interveners was induced by misrepresentation or concealment, the misrepresentation or concealment must have been of facts existing at or before the time the assents were given, and nothing of this kind appears, so far as I can see, from what the referee has found. Nor is there, so far as I can discover, proof of anything of the kind in the evidence. The settlement with Martin, to which the referee refers in connection with the intervention by Perkins & Co., Incorporated, was not made until the latter part of October, as I understand the evidence; but, whenever it was made, I am unable to find in it anything upon which a charge of misrepresentation, concealment, or fraud of any kind can possibly be based. The evidence regarding it seems to me also inadequate to charge the common-law assignee with having wrongfully paid any creditor in full, and to show that he was dealing, or had reasonable cause to believe that he was dealing, with a case in which the goods involved had been consigned to, and never purchased by, the alleged bankrupt. And I think it clear from Mr. Cook's evidence that neither he nor any client of his was dissuaded from further intervention by the disposition made of the Martin claim.

8. The referee's conclusions from the evidence are that there has been such conduct on the part of the alleged bankrupt, or of Mr. Parsons as its assignee, or of persons acting in its or his interest, as to constitute a fraud upon its creditors, disentitle it to avail itself of any defense to the petition which it has set up, or absolve from their assents all creditors who have ever accepted the assignment. In these conclusions, also, I have found myself unable to concur.

Conceding that payment of a creditor by the alleged bankrupt, or out of its property in its assignee's hands, whether such payment was directly or indirectly made, or however it may have been disguised, would constitute such fraud, and would therefore have the results described, the evidence does not seem to me to prove that any such payment has been made. Mr. Parsons testifies expressly that no part of the estate in his hands as assignee was ever so used, either directly or indirectly, and I cannot see why he is not to be believed. I do not find in the evidence anything sufficient to overcome his testimony.

I fail to see how any finding is warranted that the Dennison Company's claim has been "paid in full," or even that the assignee or any one else, through the agency of the Merchants' Bank or otherwise, has bought it, whether with or without the understanding that the company's intervention was to be withdrawn. No connection of the bankrupt, at least, with any such transaction appears.

The relations shown by the evidence to exist between the alleged bankrupt and Parsons, its assignee, though of course intimate, do not in my opinion compel or require his identification with it, so as to make it of necessity a participant in all his acts. Granting that he did in fact

arrange wth the Merchants' Bank to "take care of" or "assume" the claim of any creditor, and that such action on his part was in any way improper, I do not think the arrangement can properly be said to have been made at the instance of the debtor, through Parsons as its agent. Further evidence than is here presented is necessary before the complicity of the debtor in the transaction can thus be asserted. It is not to be presumed, and the evidence seems to me equally consistent with the theory that Parsons acted at the instance of the creditors or some of them and as their agent. He is the bankrupt's agent only for the purposes declared in the assignment.

It sufficiently appears from the record that this case is one in which only a comparatively inconsiderable minority of the creditors desire the administration of the estate in bankruptcy, and that by far the greater proportion of them, in number and amount, regard the common-law assignment as more for their interests. Notwithstanding what is said in Lowenstein v. McShane Co. (D. C.) 130 Fed. 1007, 1009, I should not regard these facts as warranting the court in "resolving every doubtful question of fact or law against the petitioning creditors." If there are three bona fide creditors whose claims amount in all to $500, Congress has given them the right to insist on bankruptcy, however great the majority of creditors who disagree with them. But, on the other hand, I cannot doubt that those creditors, so long, at least, as they act independently of the bankrupt, who, if he interferes, is in danger of offending against the provisions of the act, are at liberty to take any measures not otherwise unlawful to avert the filing of an involuntary petition, or the joinder of any creditor in such petition. In a mere endeavor to uphold a common-law assignment as against a bankruptcy petition, involving no collusion with the bankrupt and no use of funds or property belonging to the estate, I see nothing necessarily unlawful, whether the endeavor be made by creditors or by a common-law assignee, acting with them or in their interest.

I am unable to think that any fraud on the part of the bankrupt, of Parsons, or of the Merchants' Bank is fairly established by the evidence. For this reason, as well as for the other reasons set forth, I must hold that up to February 15, 1909, the date of the hearing before the court on the referee's report filed January 28, 1909, there were only two creditors seeking to maintain the petition who have the right to do so, viz., Stroheim & Romann and Dodman. The Dennison Company is permitted to withdraw its intervention if desired. Perkins & Co., Incorporated, is estopped to join. The petition is to be dismissed, unless Leahy, whose petition to intervene was filed February 25th, shall hereafter be allowed to join.