## In re LEWIS F. PERRY & WHITNEY CO.

(District Court, D. Massachusetts. April 17, 1909.)

No. 14,121.

1. BANKRUPTCY (§ 88*)—PETITIONING CREDITORS—RIGHT TO JOIN.

An issue having been made on a bankruptcy petition, and the attorneys for the original petitioners fearing they would not succeed thereon, their father, who was not a creditor of the bankrupt, either when the act of bankruptcy was committed or when the original petition was filed, after the hearing purchased a note against the bankrupt, which he assigned to intervener, a member of the bar, absolutely, who thereupon signed a petition to intervene and join as a petitioning creditor; the petition being drawn and filed by the attorneys for the original petitioners. Intervener gave for the note nothing but his services rendered or to be rendered in the matter; nothing being said to him as to the amount of his compensation or concerning what he was to do with any dividend that might be received on the note. *Held* that, though intervener was a "creditor" having a provable claim within Bankr. Act July 1, 1898, c. 541, § 59b, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3445), authorizing such creditors to file a petition in bankruptcy, he was, nevertheless, not entitled to intervene, owing to the manner in which he had procured the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 110; Dec. Dig. § 88.*]

2. BANKRUPTCY (§ 76*)—PETITIONING CREDITORS—ASSIGNMENT OF CLAIMS—ESTOPPEL.

Where a trust company held a bankrupt's note at the time it made an assignment for the benefit of creditors, and for four months thereafter did not attempt to become a party to involuntary bankruptcy proceedings, it was thereafter estopped from maintaining an involuntary petition against the bankrupt, and hence could not confer such right on its subsequent assignee of the note.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 99; Dec. Dig. § 76.*]

In the matter of the Lewis F. Perry & Whitney Company, an alleged bankrupt. On petition of Francis T. Leahy to join as a petitioning creditor. Petition dismissed.

See, also, 172 Fed. 744, 745.

Jacobs & Jacobs, for petitioning creditors.
Charles E. Heywood, for alleged bankrupt.
Morse & Friedman, for objecting creditors.
Francis T. Leahy, pro se.

DODGE, District Judge. It was held in this case on April 7, 1909, that, unless Leahy's application to join as a petitioner is to be allowed, there are only two creditors before the court, seeking to maintain the original petition filed September 23, 1908, who can be recognized as entitled to maintain it, and that it must be dismissed unless Leahy is so entitled. Upon his petition there has now been a hearing. That his petition is not to be dismissed merely because it was filed too late has been decided. See the opinion herein dated March 27, 1909. 172 Fed. 744. The present hearing has been upon his petition and the answers thereto, filed since March 27th, and is to determine whether or not he can be recognized as a creditor entitled to join in and maintain the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

original petition. If he cannot, that petition must be dismissed for want of parties sufficient in number to maintain it.

The material facts brought out at the hearing are undisputed, and are as follows:

The petitioner is a member of the bar of this court. Neither at the time of the assignment, made September 10, 1908, by the alleged bankrupt, upon which the original petition is founded, nor when the original petition was filed, on September 23, 1908, was he a creditor of the alleged bankrupt. He has since acquired and now holds a note given by it, to which his petition refers. He produced and identified it at the hearing. Its date is June 1, 1908. It is for $1,000, payable four months from date, to the alleged bankrupt's order, and indorsed by it and some of its officers. It was protested for nonpayment on October 1, 1908, and has the certificate of protest annexed.

The petitioner first received this note on February 25, 1909, from Charles Jacobs, whom he then met for the first time, and to whom he was then introduced by Philip W. and Joseph B. Jacobs, also members of the bar of this court and attorneys for the original petitioners in this case. They are the sons of Charles Jacobs.

It was stated to the petitioner in their office that Charles Jacobs had a note of the alleged bankrupt and that he wished to join in these proceedings as a petitioning creditor. Leahy was asked to act as his attorney for that purpose, and consented to do so. It was then further stated to him that Jacobs did not want to appear in his own name, and it was proposed that the note be transferred to Leahy, and the intervention be made in Leahy's name. Leahy said the note would have to be transferred to him absolutely; and, this being agreed to, he took the note, and has since kept it. On the same day this petition by him to intervene was filed in court; he appearing pro se. The petition was drawn by Philip W. or Joseph B. Jacobs, and they also filed it in court after Leahy had signed it.

Leahy gave for the note nothing but his services rendered or to be rendered in the matter. Nothing was said about the amount of compensation he was to have for such services, or about what he was to do with any dividend or proceeds that might be received on the note. Nothing has ever been paid him in connection with the matter.

Charles Jacobs was not a creditor of the alleged bankrupt, either on September 10th, when it made its assignment, or on September 23d, when the original petition against it was filed, or at any time before he obtained the note passed over to Leahy as above. He first obtained the note, either on February 25, 1909, or a day or two before, from the International Trust Company, which held it on September 10, 1908, and had continued to hold it ever since. He paid the trust company $1,000 for it. He stated at the hearing that his only reason for buying it was that he had heard that certain national banks were buying up claims and trying to defeat his sons (i. e., in the attempt to secure adjudication in this case), and had thereupon made up his mind that he would buy a claim to stop that. He further stated that he had no expectation of receiving anything for the note, and that to have an intervention upon it in these proceedings was all he was looking for.

A few days before the above transactions regarding this note, which

172 F.—48

resulted in Leahy's petition to intervene, viz., on February 15 and 16, 1909, there had been a hearing before the court on the referee's report regarding adjudication, filed January 28, 1909. All the disputed issues involved in the question of adjudication, which had been raised up to that time, were at that hearing discussed and submitted for the decision of the court, which had taken them under advisement, but had not on February 25th rendered any decision. Its decision was not rendered until April 7, 1909. See the opinion of that date herein. 172 Fed. 745. It was, of course, obvious on February 25th that if the court should (as it ultimately did) hold that on February 15th there were only two petitioning or intervening creditors capable of maintaining the original petition, the dismissal of that petition must follow, and the manifest object of Charles Jacobs' purchase of the note, its transfer to Leahy, and the filing of Leahy's petition was, therefore, to avoid this result by providing an additional intervening creditor.

When he filed this petition on February 25th, Leahy "owned a demand or claim provable in bankruptcy," and was thus within the language of the definition of "creditor" in section 1 (9) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3421]). The same is true of Charles Jacobs after he bought the note and before he delivered it to Leahy. "Creditors who have provable claims" may, by the language of section 59b, file a petition to have the debtor adjudged bankrupt, and this language would include Leahy or Jacobs.

The court, however, is not in every case bound by the mere words of the act to recognize the holder of a provable claim for the time being as necessarily entitled to maintain an involuntary petition. Thus, though he owns a provable claim, a creditor who has accepted an assignment may not maintain a petition founded on the assignment as an act of bankruptcy. I have referred in the opinion in this case, dated April 7, 1909, to the authority in support of the proposition that a creditor, though he owns a provable claim at the time he appears in court, cannot maintain an involuntary petition unless he was a creditor when the act of bankruptcy was committed, so as to have the right to complain of the act as an injury to him. Whether the right to maintain such a petition would have to be denied under all circumstances, or not, to a creditor who acquired his provable claim subsequently to the act of bankruptcy, it seems to me clear that justice requires its denial to a "creditor" whose claim has been acquired under circumstances such as appear in this case. If one creditor may lawfully purchase the claims of others in order to assist involuntary proceedings, it does not follow that all the rights of an original creditor may be acquired at any time by the mere purchase of a claim against the debtor, no matter how long after the act of bankruptcy, or how long after the filing of the petition, or who the purchaser may be.

The adjudication in involuntary proceedings, for which the bankruptcy act provides, seems to me intended to be the result of the respective rights and obligations of the debtor and his creditors as they exist at the time of the act of bankruptcy or of the filing of the petition. Whether there shall be adjudication or not concerns them, and does not

properly concern any one between whom and the debtor no relations existed at either of those times. I do not believe it to have been intended that adjudication should result from or depend upon an altered situation arising later, still less a situation artificially created in order to affect the proceedings, by one with whom the debtor has never dealt in any way.

If the petitioner, Leahy, is recognized as a creditor entitled to maintain this petition, and adjudication is ordered, the respondent will have been adjudged bankrupt, not because there are three creditors having a right to complain of its assignment made September 10th, who desire this result, but because Charles Jacobs, to whom the debtor owed nothing when the assignment was made, and who never had any claim of any sort upon the debtor, until more than four months had passed since the assignment was made, has now undertaken to interfere in proceedings with which he had until now no concern at all, for the purpose, openly declared by him to have been his sole purpose, of enabling his sons, the attorneys for the original petitioners, to prevail in the controversy regarding adjudication.

In my opinion, to permit this would be to permit a use to be made of bankruptcy proceedings for which they were never intended and which is contrary to the policy of the act.

It is further to be considered that upon the uncontroverted evidence at the hearing the trust company, from whom Jacobs bought the note referred to, though it owned the note on September 10, 1908, and though it was fully informed at the time regarding the assignment which the debtor that day made, never became or attempted to become a party to the involuntary proceedings against the debtor, but allowed four months from the date of the assignment to expire without doing so. It had thus become estopped, in my opinion, before it transferred the note to Jacobs, from maintaining the involuntary petition as holder of the note. Jacobs, in view of the time and circumstances under which he got the note, ought not to be allowed rights greater than those which the trust company could have asserted.

The petition to intervene is to be dismissed.

The original petition filed by Stroheim and others on September 23, 1908, is also to be dismissed.